UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| SUZANNE MCCOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 14-371-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| EXPERIAN INFORMATION SOLUTIONS, INC., et al., | ) ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of a motion for summary judgment filed by Defendant Experian Information Solutions, Inc. ("Experian") in this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). Plaintiff Suzanne McComas seeks damages relating to two separate errors in two accounts reflected in her Experian information. Experian used reasonable procedures to assure accuracy of the information included in McComas' credit report and complied with its obligations to promptly investigate and correct errors. Accordingly, Experian's motion for summary judgment will be granted.

**I.**

Experian is a Consumer Reporting Agency ("CRA") subject to the FCRA. As a CRA, Experian collects information from data furnishers, known as "subscribers," and then provides that information to the individual, or consumer, and creditors. [Record No. 53-3, p. 3] Experian does not originate the credit information contained in consumer credit reports. [*Id.*] It does not extend or deny credit, but provides a resource for creditors and others to access. [*Id.*] Subscribers submit updates to the accounts for individual consumers. An

individual's account information may also be updated as a part of the dispute resolution process or single item update. [*Id.*]

### A. H & R Account

In 2013, McComas tried to obtain a mortgage loan from Farm Credit Mid-America and Central Kentucky AgCredit to purchase a home in Cynthiana, Kentucky; however, her applications were denied. [Record No. 53-4, p. 21] She eventually applied for, and obtained, financing for the property from Whitaker Bank. [Record No. 53-4, p. 11] McComas and her ex-husband, a co-signer on the mortgage, own the Cynthiana home jointly. [Record No. 53-4, p. 12]

On July 24, 2013, an Experian agent processing a transaction log from H & R Accounts made a mistake when revising McComas' account information. [Record No. 53-3, p. 6] As a result, between July 24, 2013 and August 27, 2013, Experian's records erroneously reflected that one of McComas' debts was a foreclosure action with H & R Accounts with a past due balance totaling $342,732.00. [Record No. 53-3, pp. 6–7] Prior to July 24, 2013, the H & R Account was accurately reported as a collection in the amount of $209.00. [Record Nos. 1, ¶ 8; 53-4, p. 21–22]

On August 26, 2013, McComas contacted Experian regarding the error. [Record No. 53-4, p. 25] Experian started the reinvestigation the same day by contacting H & R Accounts to investigate the accuracy of the report. [Record No. 53-3, p. 7] The next day, H & R Accounts instructed Experian to delete the account. [Record No. 53-3, p. 7] Experian deleted the account the same day and forwarded notification of the resolution to McComas. [Record Nos. 53-3, p. 7; 53-4, p. 17; 53-5]

Although Experian's records relating to H & R Accounts were inaccurate between July 24, 2013 and August 27, 2013, there were no inquiries for mortgage financing between those dates. [Record No. 55-3, p. 22] Thus, none of the mortgage financing entities, including Farm Credit Mid-America, Kentucky Bank, Central Kentucky AgCredit, or Whitaker Bank, received a credit report with the incorrect information regarding H & R Accounts. [Record No. 53-3, p. 8]

### B. Citibank Account

In the course of responding to a dispute letter regarding McComas' account with Home Depot, financed through Citibank, N.A. ("Citibank Account"), Citibank provided an updated account balance to Experian on January 9, 2014. [Record No. 53-3, p. 8] In that correspondence, Citibank listed the account balance as $53,700.00 rather than the correct balance of $5,370.00. [Record No. 53-3, p. 9] Although the balance increased, the rest of the Citibank Account information remained accurate. Thus, at all relevant times, the Citibank Account accurately reflected that it was "charged off," with $5,370.00 written off by Citibank. [Record No. 53-11, p. 9]

In April of 2014, McComas applied to refinance her mortgage without a cosigner. [Record No. 53-4, p. 13–14] On April 11, 2014, Veterans United Home Loans ("Veterans United") obtained a tri-merged credit report, which contained credit scores and other information by Experian, Trans Union, and Equifax. The tri-merged credit report listed McComas' Experian credit score as 628, her Trans Union score as 698, and her Equifax score as 558. [Record No. 53-7, p. 11] Veterans United denied McComas' application. It

listed the principal reason[1] for the denial as "[d]elinquent past or present credit obligation with others." [Record No. 53-9, p. 2]

On May 8, 2014, McComas contacted Experian to request a reinvestigation of the Citibank Account. [Record No. 53-4, p. 26] Experian began the reinvestigation on the same day. [Record No. 53-3, p. 9] On May 14, 2014, Citibank responded to Experian with instructions to revise McComas' recent balance to $5,370.00 and update the past due amount from $4,463 to $4,733. [Record No. 53-3, p. 9] Experian made the requested changes on the report and sent McComas documentation regarding the results of the reinvestigation on the same day. [*Id.*]

Six days later, on May 20, 2014, Veterans United requested another tri-merged credit report. This new tri-merged report accurately reflected the recent balance the Citibank Account as $5,370.00. [Record No. 53-17, p. 5] Veterans United subsequently contacted McComas, but she was not approved for refinancing. [Record No. 53-10, p. 6]

## II.

Summary judgment is appropriate when there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a

---

1 McComas claimed during her deposition that the loan officer informed her that the loan was denied because "the credit report was showing a $53,700 debt from Home Depot . . . that was it, that I had a huge revolving debt." [Record No. 53-4, p. 14]

jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986); *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008). In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

### III.

#### A. Unreasonable Procedure Claim (15 U.S.C. § 1681e(b))

McComas claims that Experian did not follow reasonable procedures to assure the accuracy of the information contained in her report. 15 U.S.C. § 1681e(b). Experian concedes that incorrect information regarding the H & R Account and Citibank Account was included in McComas' information. Inaccurate information in a credit report, however, does not automatically make a CRA liable to the affected consumer. Instead, the CRA is required to exercise reasonable care, which is defined "by reference to what a reasonably prudent person would do under the circumstances." *Spence v. TRW, Inc.*, 92 F.3d 380, 383 (6th Cir. 1996). To succeed on her claim, McComas must show that: (1) Experian reported inaccurate information about her; (2) Experian either negligently or willfully failed to follow reasonable procedures to assure maximum possible accuracy of the information about her; (3) she was injured; and (4) Experian's conduct was the proximate cause of her injury. *Nelski v. Trans Union, LLC*, 86 F. App'x 840, 844 (6th Cir. 2004).

With respect to the H & R Account, none of the mortgage companies, including Kentucky Bank, Central Kentucky Ag Credit, or Whitaker Bank requested, or received, a credit report for McComas during the period of July 24, 2013 to August 26, 2013, which reflected the incorrect information. In fact, there is no evidence suggesting that any reports

were issued during the time that time.[2] *Brown v. Wal-Mart Stores, Inc.*, 507 F. App'x 543, 546 (6th Cir. 2012) ("Under the plain language of § 1681e(b), [a plaintiff] cannot maintain a claim for allegedly improper procedures unless the consumer reporting agency actually issued a consumer report about him.").

With respect to the Citibank Account, McComas has shown that she was denied mortgage refinancing by Veterans United, but has not demonstrated that it was caused by any error in the Citibank Account or as the result of Experian's actions. Veterans United denied McComas' application on April 11, 2014, but she had not challenged the amount reflected for the Citibank Account in Experian's report at that time. *See Reed v. Experian Information Solutions, Inc.*, 321 F. Supp. 2d 1109, 1115 (D. Minn. 2004) ("A CRA cannot be held liable for a denial of credit occurring before it has been put on notice that its report is disputed."). The statement of credit denial gave only one reason for the denial—"[d]elinquent past or present credit [obligation with] others." [Record No. 53-9, p. 2] The Citibank Account error only changed the recent balance, not the other account information, such as the past due amount of $4,463. [Record 53-17, p. 5]

After Experian corrected the Citibank Account error, Veterans United requested another tri-merged credit report, dated May 20, 2014. McComas admitted that the May 20, 2014, report correctly reflected that the Citibank Account balance was $5,370. [Record Nos. 53-4, pp. 18–19; 53-10, p. 6] Her loan remained denied, despite the correction.[3]

---

2  The inquiries associated with an application for credit are referred to as "hard" inquiries. They are reflected on the credit report or credit disclosure to the consumer.

3  McComas testified that the loan officer told her that the information still had not been corrected in the May 20, 2014 report. [Record No. 53-4, pp. 16–17] ("The one that he saw [on May 20, 2014], it wasn't fixed yet, no. I believe that's what happened."). However, the May 20, 2014 report submitted to this

-6-

Veterans United stated that she was denied due to delinquent past or present credit obligations. Experian notes that Veterans United's manual underwriting policy states that loans "must" meet certain requirements, including that an applicant have no more than $5,000.00 in collections. [Record No. 53-8, pp. 29–30] Approval of an amount up to $5,000.00 is "at underwriter discretion." [*Id.*] McComas' April 11, 2014 tri-merged account listed a sum of $8,655.00 of accounts in collection. [Record No. 53-7, p. 4] McComas argues that the loan officer assured her that these collection amounts were "not an issue for the denial," and that she met certain exceptions to the policy. [Record No. 57, ¶ 8]

Despite McComas' assertions, however, Veterans United denied her application due to delinquent past or present credit obligations, which were not impacted by the Citibank Account error relating to the current balance of the account. Certainly, the fact that her application continued to be denied even after the Citibank Account was corrected would suggest that it was not a factor in Veterans United's decision.

The Court need not reach this issue, however, because even drawing all reasonable inferences in favor of McComas, she has not presented any evidence to suggest that Experian's conduct was the proximate cause of Veterans United's denial of her loan application or any other harm. *Moore v. First Advantage Enter. Screening Corp.*, Case No. 4:12-cv-0792, 2013 WL 1662959, at *4 (N.D. Ohio April 17, 2013) ("The burden of proving

---

Court is correct and McComas admitted that the May 20, 2014, report contained the correct information. [Record No. 53-4, pp. 18–19] While McComas did not raise this statement by the loan officer in her response to the motion for summary judgment, the Court notes that this hearsay statement is insufficient to create a genuine material issue of fact under the circumstances presented. The loan officer's alleged statement is directly contradicted by evidence before the Court and McComas' admissions.

causation remains with [the plaintiff] at all times to prove that the alleged FCRA violation was a substantial factor in causing the asserted actual damages.").

In support of her reasonable procedures claim, McComas points to evidence that Experian has the capability to monitor and alert consumers immediately when an error is reported on their credit report and argues that it is obligated to do so under the FCRA. This would amount to a requirement that Experian verify, or reinvestigate, each and every account every time new information is provided. She faults Experian for only monitoring accounts of consumers who are paying a monthly fee for the service. McComas argues that this dereliction of Experian's duty demonstrates willful negligence. However, the service she describes, known as "Credit Tracker," is provided by a third-party [Record No. 57-4, p. 7], and the FCRA does not impose such a high burden on CRAs. *Nelski*, 86 F. App'x at 847 (rejecting the argument that the FCRA requires verification of debts with each creditor each time a report is released). Instead, the statute places the onus on the consumer to monitor their own information. "If the accuracy of an item of information contained in a consumer credit file is disputed by the customer, the statute contemplates that the consumer will convey this information to the reporting agency so that the agency can record the current status of the information." *Spence*, 92. F.3d at 383.

Finally, McComas argues that Experian "admitted to a total of 28 separate inquiries by different entities during the time the erroneous information was included on [her] credit report." [Record Nos. 57, p. 3; 57-3, pp. 13–22] These were "soft" inquiries, which are inquiries by subscribers that are not associated with an application for credit during the relevant time frame. These soft inquiries do not result from a credit application, but may be made for other purposes. [Record No. 53-3, p. 7] These inquiries only appear on credit

-8-

disclosures to the consumer. [Record No. 53-3, p. 7] They are not reflected on a credit report and the number of inquiries does not impact a consumer's credit score. [Record No. 53-3, p. 7]

Although McComas generally argues that she was harmed by information provided in the course of these soft inquiries, she has not presented any evidence that she was harmed as a result of the incorrect data, or as a result of Experian's conduct, related to these inquiries. Further, she has not demonstrated that any of the soft inquiries impacted her credit or that any of the subscribers making a soft inquiry requested a credit score. Credit scores are generated upon demand and calculated based on the information available in a report on a particular date. [Record No. 57-4, p. 9] McComas generally argues that past incorrect information continues to harm her credit score, but she does not point to any evidence to this effect. Further, inaccurate information alone is insufficient to impose liability on Experian. In short, McComas has not demonstrated that any genuine issues of material fact exist regarding injury or causation on this claim.

**B. Unreasonable Investigations Claim (15 U.S.C. § 1681i)**

A CRA's duty to conduct a reinvestigation is not triggered until the consumer notifies the agency directly, or indirectly through a reseller, of the dispute. 15 U.S.C. § 1681i. But once notified, the CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file" within thirty days. *Id.* Thus, to survive summary judgment, McComas must show that she disputed information in Experian's report and that it failed to reinvestigate the information, or failed to confirm, correct, modify, or delete the questioned

information within the requisite time period. *Reed v. Experian Info. Solutions, Inc.*, 321 F. Supp. 2d 1109, 1113–14 (D. Minn. 2004). She cannot meet this burden.

After McComas challenged the H & R Account, Experian conducted a prompt reinvestigation, corrected the account, and informed McComas of the result of the reinvestigation within two days. Likewise, Experian promptly reinvestigated McComas' dispute regarding the Citibank Account. That reinvestigation was completed within six days of McComas' dispute of the information contained in the report.

Relying on Experian's Disclosure Logs, McComas argues that she contacted Experian regarding the H & R Account on July 26, 2013, and August 19, 2013. The entries for those dates of correspondence state "Duplicate Dispute – No Action." [Record No. 57-5, pp. 2–3.] McComas argues that these entries are proof that Experian took "no action" in response to her dispute. These entries are included in a long list of disputes relating to several accounts, all occurring on the same days.[4] Although she claims that this represents Experian's failure to conduct a reasonable reinvestigation, the letters received on July 26, 2013, and August 19, 2013, contested that McComas was responsible for the H & R Account at all, not that the account information was incorrect. [Record No. 53-12, pp. 44, 47 ("I am not longer liable for [the H & R Account].")] McComas, or Prime Legal Services, acting on her behalf, had disputed every negative account in her name on numerous occasions in the past, which resulted in the "duplicate" classification. [Record No. 53-4, pp. 9–10] Because Experian had previously investigated this account, and determined that McComas was the owner of the

---

4  McComas contracted with a credit repair company, Prime Legal Services, which also contacted Experian on her behalf during the relevant time period. [Record No. 53-2, p. 3] A number of her accounts, including the Citibank Account, were repeatedly challenged as fraudulent accounts, either by McComas or the credit repair company on her behalf. [Record No. 53-4, pp. 9–10]

account, it properly classified the duplicate dispute that the account was fraudulent as frivolous under 15 U.S.C. § 1681i(3)(A). Experian's duty to conduct a reinvestigation was only triggered when McComas challenged the amount of the recent balance on May 8, 2014.

Similarly, with respect to the Citibank Account, McComas or Prime Legal Services, acting on her behalf, submitted several letters to Experian arguing that this account was a fraudulent account opened by someone who stole her identity. [Record No. 53-12, pp. 1–55] However, the first time that the amount of the account was challenged was May 8, 2014, the same day that Experian began its reinvestigation. Accordingly, McComas has not presented any evidence suggesting that Experian violated its duties to conduct a timely and reasonable reinvestigation.

### C. Punitive Damages Claim (15 U.S.C. § 1681n(a)).

Experian may be liable for punitive damages if it "willfully fails to comply with a requirement" imposed under the FCRA. 15 U.S.C. § 1681n(a). As discussed, McComas has not demonstrated that Experian violated its duties under the FCRA, either negligently or willfully. Accordingly, punitive damages are unavailable.

### IV.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that the defendant's motion for summary judgment [Record No. 53] is **GRANTED**.

-12-

This 29th day of July, 2015.



Signed By:
*Danny C. Reeves* DCR
United States District Judge